DARIUS H. DENTON *et al.*

*v.*

AMOS C. JACKSON.

*Filed at Ottawa May 10, 1883.*

1. STATUTE OF FRAUDS—*promise to pay the debt of another.* A promise to pay the debt of another, after the debt has been already incurred, is void, unless such promise is made in writing.

2. COMMISSION MERCHANT—*purchasing for future delivery—on margins—notice to the customer before sale.* Where a commission merchant purchases pork and lard on the board of trade for a customer, for future delivery, the customer having advanced the required margin, and no agreement is made as to notice in case the commission merchant is compelled to secure himself against loss by a sale of the property, the transaction will be governed by the rules of the board of trade; and if its rules require notice, the merchant must give it before he can place his customer in default. If there is no contract in regard to such notice, or any rule of the board of trade, the common law requires a reasonable notice to the customer, and opportunity to make the margins good before a sale.

3. SAME—*liability in case of a wrongful sale.* If a purchaser through a commission merchant, on the board of trade, has sufficient margins in the

hands of the latter, the commission merchant will have no right to sell the property without authority from the purchaser he represents; and if he does so sell, and loss results, he will be bound to make good the purchaser's loss, and such purchaser may, in such case, recover of him the full amount deposited as margins.

4. Instruction—*mere obscurity not fatal.* The mere obscurity of an instruction is no ground for a reversal. The instruction must mislead, or be calculated to mislead, to the injury of the party against whom it is given, to justify a reversal.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. Elliott Anthony, Judge, presiding.

Messrs. Walker & Carter, for the appellants.

Mr. Frederick A. Herring, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action by appellee to recover moneys placed in the hands of appellants as margins on the purchase of pork and lard on the board of trade in Chicago. Of the undisputed facts it appears appellee commenced dealing in these articles on the board of trade in the spring of 1881, and so continued, at intervals, until the 12th day of December of that year. To enable him to do so, he employed appellants, who were commission merchants in the city, he remitting the margins on each purchase, and as they became necessary as prices declined. He had thus made and closed a number of purchases. On the 12th of December, 1881, appellants held ·for appellee 2000 barrels of pork and 500 barrels of lard, for delivery the next month. Appellee claims he had in the hands of appellants $3275.69 as margins, and that the amount of pork and lard claimed to have been held for him by appellants required but $3000 as margins, according to their agreement. On that day appellants closed out, or claimed to have sold the purchases, at a loss of $1927.50. We have not been able to find any evidence of whom the

property was purchased, or to whom it was sold, or whether the purchase and sale was merely a supposed or fictitious transaction on the part of appellants, or whether a mere entry of a memorandum in their books that appellee had purchased or sold the articles ordered, was, by them and others, treated and considered as purchases.

It is not disputed that in September, 1881, J. K. Plank, a farmer residing in the neighborhood of appellee, made purchases, on his own account, through appellants, of grain and other articles on the board of trade, furnishing margins, and, as usual with country dealers on the board, he was sold out, on the 7th day of November, 1881, at a loss, as they claim, of $1227.50. Appellee and Plank made some purchases in September, 1881, but it seems to be admitted on all hands that these joint purchases were closed up by the 1st of October, 1881. It is conceded that appellants appropriated $1097.50 of money remitted by appellee, and credited it to Plank's account, to cover his losses, and charged it up to appellee. He protested against this action on their part, but they claimed that they did it under authority from him, and this he denies. On the 12th of December, 1881, appellants telegraphed to put up more margins, but receiving no answer, they, in about three and one-half hours afterwards, sold the pork and lard, as they claim, at a loss of $1927.50, on the claim that appellee's margins were within $100.69 of being exhausted. He, on the contrary, claims when they sold he had as margins in their hands $3275.69, and upwards of $200 more than was required under their agreement, and he claims the sale was unauthorized, and being so, they should bear the loss. They also claim that he authorized them to sell, but this he denies. On the trial the jury found a verdict in favor of plaintiff for $3175, having deducted the sum of $100.69 appellants had paid into court. After overruling a motion for a new trial, the court rendered a judgment on the verdict. Defendants thereupon appealed to the Appellate

Court for the First District, where the judgment was affirmed, and they appeal to this court.

On the question of the authority to sell at the discretion of appellants, and to appropriate funds remitted by appellee to cover losses by Plank, the evidence is conflicting; but the jury found in favor of appellee, and the Appellate Court having affirmed the judgment, they found the facts as did the jury, and we must accept these findings as conclusive, and are prohibited from considering the weight of the evidence. We can, therefore, only consider questions of law presented by the record. Exceptions are taken to the instructions given for appellee, and it is insisted that they are erroneous, and must have misled the jury in their finding.

It is first claimed that there is no evidence upon which to base appellee's second, fifth and sixth instructions. There was evidence that the remittances by appellee were credited to him, and afterwards a portion of the amount was transferred to Plank's credit. The evidence is conflicting as to whether they were authorized to make the transfer. There was evidence tending to prove appellee authorized appellants to make the transfer, and this evidence was contradicted. It was therefore proper for the court to instruct the jury as to the Statute of Frauds. If there was a promise by appellee to pay the debt of Plank after it was incurred, then it was not error to instruct the jury that such a promise would be void unless it was in writing, and signed as required by the statute. There was evidence tending to prove such a promise, but not in writing.

It is insisted that the trial court misdirected the jury as to notice that appellants would sell the pork and lard unless margins were made good. The instruction complained of is this:

"And if the pork and lard were sold by the order or consent of the plaintiff on December 12, 1881, then no recovery

can be had; or if the plaintiff's margins ·became exhausted, and he was notified to produce the necessary margins, and failed to do so within a reasonable time, according to the customs and usages of the board of trade, if any custom or usage existed in regard to the same, then such sale was justifiable; but if the jury believe, from the evidence, that such sales were made without any notice to the plaintiff, and if a notice was required by the customs and usages of the board of trade, and without his assent, or that his margins had not become exhausted, the plaintiff has a right, in law, to repudiate the trades thus made, and recover from the defendants such sums of money as he had on deposit with the defendants, irrespective of the loss or profit which may have resulted from the purchase of the aforesaid articles. The jury are instructed, as a matter of law, that in the absence of any express contract, or any custom or usage in relation thereto, between a commission merchant doing business upon the board of trade in the city of Chicago and his customer, the commission merchant has no right to sell or close out the contracts made for the customer before the maturity of the contracts, unless the customer so directs, or unless the customer fails to keep his margins good. Upon his neglect or refusal to do so, and if the commission merchant does so sell out or close out such contracts, the customer, under such circumstances as above, can recover back of the commission merchant the money deposited as margins, and the loss, if any, occasioned by the closing out of such contracts, must be borne by the commission merchant."

We perceive no objection to this instruction. It announces a correct principle of law. If the parties made no agreement as to notice in case the commission merchant was compelled to secure himself against loss by a sale of the property, then the transaction was to be governed by the rules of the board of trade; and if its rules required notice, appellants were

bound to give it before they could place appellee in default. *(Corbett* v. *Underwood,* 83 Ill. 324; *Mœller* v. *McLagan,* 60 id. 317.) If there was no contract in regard to such notice, nor any rule of the board of trade, then the common law would require reasonable notice and opportunity to make his margins good; or if his margins were good, appellants had no right to sell the pork and lard. If they sold wrongfully, and without authority from appellee, and loss resulted, appellants, under every principle of law and justice, would be liable to make good appellee's loss occasioned by their wrongful act. The custom of the board of trade was in evidence before the jury, and we find no evidence of a special agreement between the parties, and the instruction was proper to enable the jury to intelligently apply the law to the facts as they might find them.

It is insisted that the third and fourth instructions for appellee are obscure, and they could not have been understood by the jury. If this were true, their mere obscurity alone would be no ground for a reversal. Such instructions must mislead, or be calculated to mislead, to the injury of the party against whom they are given, before we are called on to reverse. After a careful examination we are unable to see that these instructions could have produced that effect. Taking all the instructions together, we are of opinion that they presented the law of the case fairly to the jury.

Perceiving no error in the record, the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*