SAMUEL H. LARMINIE

*v.*

MARK CARLEY.

*Filed at Ottawa May 15, 1885.*

1. APPEAL—*reviewing facts—generally.* Where a judgment in favor of a plaintiff in an action of assumpsit is affirmed by the Appellate Court, and there is evidence in the record tending to establish the plaintiff's theory of the case, no assignment of error can be permitted which calls in question the finding of the facts by the trial and Appellate courts.

2. On the trial of a case by the court without a jury, the court decided to admit in evidence any letters, telegrams or communications from the defendant to his agent, provided they were shown to the plaintiff or the contents in any way communicated to him by the agent; but as to what letters or telegrams were shown the plaintiff, or their contents made known to him, the evidence was conflicting: *Held,* that the finding of the trial court as to what communications had been shown or made known to the plaintiff, was review-

able only by the Appellate Court, and that it would be presumed the trial court observed the rule of evidence it adopted.

3. SAME—*reviewing facts—on question of excessive damages.* Whether the amount of damages recovered by a plaintiff in an ordinary action *ex contractu* is excessive or not, is a question of fact, which this court can not consider on appeal from the judgment of the Appellate Court, affirming the judgment of the trial court.

4. EVIDENCE—*relevancy—in the particular case—as to communications between parties prior to the transaction in controversy.* In a suit against a commission man, to recover back margins put up from time to time on a purchase for future delivery, on the ground that the defendant closed out the deal contrary to the contract, there being no complaint that plaintiff had failed to advance the requisite margins prior to the day the deal was closed out, it was *held,* that proof of telegrams from the defendant to his agent prior to that day, and communicated to the plaintiff, was irrelevant, and that there was no error in refusing to admit the same.

5. Where a plaintiff's right of action depends upon the fact whether, on a particular day, he had failed to make a further advance to one who had made a purchase for him on the board of trade, on notice on that day, there being no claim of any default prior to such time, evidence consisting of communications from the defendant to his agent, by letters and telegrams, long prior thereto, is immaterial, and properly rejected.

6. SAME—*as to proof of conceded facts.* There is no error in refusing to admit evidence to prove any fact which is not disputed, but is conceded on the trial; nor is there any error in refusing to admit evidence which does not tend to prove the fact sought to be established by it.

7. AGENCY—*forfeiture of the agent's commissions and lien.* An agent employed to make a contract in his own name, for the purchase of grain, to be delivered at a future day, for his principal, and to whom his principal has advanced the required margins to protect him from loss, and who, after receiving all the margins required, closes out the deal and thereby sells at a loss, in violation of his contract, will lose his lien on the margins in his hands, and his commissions; and the principal may, under the common counts in assumpsit, recover of him all the margins so advanced by him to the agent.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. FRANCIS A. RIDDLE, and Mr. W. C. GOUDY, for the appellant.

Messrs. KING & PACKARD, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Although this case has been elaborately argued by counsel, it would seem it ought not to require any very extended discussion, as the controlling facts occurred in a single day, and are comprised in a brief compass. The action was commenced by Mark Carley, against Samuel H. Larminie and Edward A. Bigelow. Afterwards, it was discontinued as to the latter named defendant. The declaration contains only the common counts, to which the general issue was pleaded. The suit was brought to recover certain sums of money placed by plaintiff in the hands of defendant, as margins on deals in corn and lard, made on the board of trade in Chicago. It was stipulated, to be considered and used in evidence, that the declaration contains the whole cause of action claimed by plaintiff against defendant; that all the orders, contracts, purchases and sales made or attempted to be made in connection with the cause of action, or out of which or on account of which the alleged cause of action is claimed to have arisen, or which shall be offered or introduced in evidence, were *bona fide*, and for actual delivery of the articles therein mentioned, and that neither party shall call the same in question as having any element of gambling contracts in them. On the trial in the Superior Court, plaintiff recovered a judgment against defendant. That judgment was affirmed in the Appellate Court for the First District, and defendant brings the case to this court on his further appeal.

This court is asked to reverse the judgment of the Appellate Court on two different grounds : First, because the trial court improperly excluded certain documentary and other evidence offered by defendant, on the trial of the case; and second, because, assuming as true all that the evidence produced on the trial tends to prove in favor of plaintiff, it appears the damages awarded by the Superior Court are excessive. As respects the latter point, it may be said, as to the amount

which the evidence shows a plaintiff is entitled to recover in a particular case, that is regarded, under all the recent decisions of this court, as a question of fact, and as to which the finding of the Appellate Court is conclusive on this court. But as to the rule to be adopted for ascertaining the measure of damages, that is a question of law, and so far as the question made may have any application to the facts of the present case, it will be considered further on.

The objections taken to the rulings of the court in the exclusion of testimony offered by defendant, can be more understandingly considered after a brief reference to the principal and controlling facts of the case. In the fall of 1881 plaintiff procured defendant to buy for him a large quantity of corn, for delivery in May of the next succeeding year, and also a quantity of lard, for delivery, perhaps, in March, 1882. It was, no doubt, tacitly, if not expressly, understood the purchases of these commodities were to be made on the board of trade, and as plaintiff resided in Champaign, and defendant in Chicago, the negotiations between the parties were conducted through Mr. Newell, who was defendant's local agent at Champaign. Some dealings seem to have been had between the parties prior to the transactions out of which the present litigation arose, but as to them no controversy exists now, and never did. As to the quantity of corn and lard purchased by defendant for plaintiff, and as to the prices to be paid for them, and when the same were to be delivered, there never has been any disagreement between the parties, nor as to the commissions defendant should receive for his services in transacting the business. There is some controversy as to the precise amount of margins plaintiff was to keep on deposit with defendant, but none as to the fact plaintiff should keep a sufficient amount on deposit with defendant to afford him indemnity against loss for carrying the corn and lard for plaintiff. That was done, and up to the 14th or 15th day of February, 1882, it is not claimed plaintiff had not so far com-

plied with his contract in that respect that no complaint had been made, and no right of sale (which it is conceded defendant would have had in case of failure to keep margins good,) had been insisted upon, or even claimed. If there had been any failures on the part of plaintiff, previous to that date, to keep margins on deposit, they had been waived by accepting subsequent payments of margins, and continuing to carry the corn and lard, so that up to the 15th day of February, 1882, it can not be said there was really any breach of his contract, whatever it was, as to margins to be kept on deposit with defendant. Narrowing the controversy, then, as must be done, to what occurred on the 15th day of February, 1882, and the events connected directly therewith, the case is relieved of all seeming difficulty. On that day defendant sold plaintiff's corn and lard, and the principal contention is as to defendant's right, under his contract with plaintiff, to make such sales. It seems the markets had become unsettled on the board of trade, and defendant's position is, he caused his resident agent, Newell, to give plaintiff notice that unless he put up further margins by one o'clock P. M. on the 15th day of February, he would sell his corn and lard on the market, under his contract with plaintiff, or according to the usual custom in such cases. Plaintiff denies he had any notice whatever that his deals were to be closed out, and asserts that when he was asked to do so on that day, he put up all the margins demanded. There is evidence that on the morning of the 15th of February, Newell notified plaintiff of the unsettled condition of the markets, and that he was calling for margins. In reply, plaintiff told Newell his margins were not "exhausted," and further stated he had been figuring, and that Newell looked over, and said to him: "For the time being, your margins are sufficient. If there is a change in the market—if it is lower—I will call on you." Plaintiff then left Newell's office and went to his home. In the afternoon of the same day, perhaps about two o'clock, Newell went to

plaintiff's house, and told him "the market was panicky—the bottom was about falling out," and that if he wanted to save his margins, he must put up more money. Plaintiff then gave Newell his check for $2000, and took his receipt for it for so much money paid to defendant, as margins, to secure his deals. Thereupon Newell, it is said, telegraphed defendant that plaintiff "had margined handsomely." Later in the same day, perhaps about dark, Newell again went to plaintiff, and told him he had just received a telegram from defendant that his deals had been closed out. There is a conflict in the evidence as to some of the facts occurring on the day the deals were closed, but as there is evidence tending to establish plaintiff's theory of the case, it will be understood the trial and Appellate courts found the facts that way, and no assignment of error can be permitted that will call in question the correctness of that finding. Upon the facts as they must have been found by the lower courts, as the evidence tends to establish them, it is clear plaintiff had no notice his deals were to be closed out on that day, or at any other time; that he was not in default as to margins, for, in the language of defendant's agent, he had "margined handsomely," and that defendant had no right, either under his contract with plaintiff, or under any custom proven to have existed on the board of trade, or elsewhere, in regard to such matters, to close out his deals. Keeping these facts in mind, the reason for rejecting most, if not all, of the testimony offered by defendant, of which complaint is made, is apparent. Most of the evidence rejected consisted of communications, by letters and telegrams, that had passed between defendant and his agent, Newell, and which related to matters long passed, and concerning which no controversy ever existed. The decision of the trial court might be sustained on the single ground the evidence offered was immaterial on the issue to be tried. It related to no matter in dispute between the parties, and could not, therefore, illustrate any phase of the case. What pos-

sible effect could it have on the issue joined, to prove what communications had passed between the parties concerning margins, prior to the 15th day of February? No complaint is now or ever was made that prior to that date plaintiff had been in default in regard to putting up margins on the deals closed out on that day. Whether plaintiff was in default as to margins on the day the deals were closed, was the only question then before the court, and what communications may have taken place in relation to other deals at any former time, were wholly irrelevant. The evidence tendered would obscure, rather than enlighten, the issue to be tried, had it been admitted.

But there is another view that may be taken, that leads to the same conclusion. It will be remembered the case was tried before the court, without the intervention of a jury. The court decided, in regard to all this class of testimony: "Any letters, telegrams or other communications between defendant and Ellis J. Newell, were competent and proper evidence to be introduced on the part of defendant, provided that any such letter, telegram or other communication was shown to, or the contents in any way communicated to, the plaintiff." It is not made a matter of objection that this ruling was not as broad as the law would warrant, but the complaint is, the court repeatedly violated the rule announced, in its subsequent rulings. If the court departed from the rule it had declared, it must have been in excluding letters or telegrams that had been shown to, or the contents communicated to, plaintiff. How could it be known to this court whether a letter or telegram that had been shown to, or the contents disclosed to, plaintiff, was rejected when offered in evidence? Obviously, what letters or telegrams had been shown to plaintiff, or the contents communicated to him, could only be known from the evidence, and as to them the evidence was quite as conflicting as to any other point in the case. It was the privilege of the trial court to determine, from the evidence, conflicting as it

was, what communications had been shown to, or the contents made known to, plaintiff, and its decisions as to such controverted facts are only reviewable in the Appellate Court. It can not, therefore, be known to this court that the trial court rejected any communication, whether by letter or telegram, that may have passed between defendant and Newell, that the proof showed had been exhibited to plaintiff, or the contents disclosed to him. To ascertain that fact would require this court to determine controverted questions of fact, which is not allowable. The court decided it would admit any letter, telegram or other communication between defendant and his agent, Newell, that had been shown to, or the contents communicated to, plaintiff, and the presumption will be indulged it observed the rule of evidence adopted, and admitted everything it believed, from the evidence, had been so proven.

It is said the correspondence between defendant and Newell, if admitted, would go far to confirm Newell's testimony that he had made the calls for margins, as directed, as was his duty to do. How the testimony offered could have any such effect, is not readily understood. As before remarked, there was no controversy as to what Newell did, as agent for defendant, in making calls for margins *prior* to the 15th day of February, and it would seem to be absurd to contend that letters or telegrams sent by defendant weeks or months before, could, in the remotest degree, tend to prove that Newell on that day performed a duty devolved on him by his relations with defendant. The presumption the agent did his duty to his principal is just as strong without such testimony as with it.

Coming now to consider testimony offered relating more nearly to events that transpired on the 15th day of February, no error is perceived in the rulings of the court in the rejection of testimony. It is proven that on the 14th and 15th days of February, defendant sent from Chicago, to Newell, one letter and a number of telegrams,—perhaps three, in all,

—directing Newell to call on plaintiff for further margins. These papers, it is said, were offered, in connection with Newell's evidence, to prove that Newell made calls on plaintiff for margins, on the 14th and 15th days of February, by direction of defendant, and that plaintiff neglected to margin as required, and therefore his deals were lawfully closed for want of reasonable margins. If the letter and the telegrams were offered with a view to show Newell had authority from defendant to make calls for margins, that was wholly unnecessary, as it was a conceded fact Newell had such authority; but if done to show Newell actually made such calls, then it is sufficient to say the evidence tended to prove no such thing,—so that in either view the evidence was unimportant. But aside from this view, it is clear that every one of these papers that was at all material to the matter in issue between the parties was in fact admitted in evidence. The letter was read in evidence, and the telegram of the morning of the 15th was lost, but Newell was permitted to state his version of its contents, and that was all that defendant could reasonably insist upon. Had the other telegrams of near that date been given in evidence, they would have proved nothing material to the defence not contained in the letter and telegram actually read in evidence, and it would have been useless to incumber the record with so many repetitions of the same thing. These telegrams are preserved in the transcript of the record, and it is seen they only contain statements as to the unsettled condition of the market, and that Newell was required to call for margins. All that was in the letter and telegram in evidence, and nothing more was required.

Objections taken to the rulings of the court in the rejection of other testimony have so little in their support it is not deemed necessary to remark upon all of them, and to do so would extend this opinion to a most unreasonable length. It is sufficient to say they have all been considered, and it is found none of them are tenable.

Although the court was not asked, by any written proposition to be held as law, to state what rule would be adopted to ascertain the measure of damages, it is quite evident the court determined plaintiff was entitled to recover the whole amount of margins deposited with defendant, and that, it is said, was error of law. The question made on this branch of the case is not new in this court. In *Jones* v. *Marks,* 40 Ill. 313, it was held that where a party making the purchases of grain or other commodities, disobeyed instructions in making sales, he thereby lost all lien upon the money deposited with him as a pledge against loss, and as the depositor was thereby released from the contract, he became entitled to withdraw the money from the hands of the depositary, and could maintain an action for its recovery. Since then the principle of that case has been recognized and followed so often it may now be regarded as the settled law, in this State, at least, whatever it may be elsewhere. (*Oldershaw* v. *Knowles,* 101 Ill. 107; *Denton* v. *Jackson,* 106 id. 433.) These cases are, of course, conclusive of the same point in the case now before the court.

It was also held in *Jones* v. *Marks, supra,* the money in the hands of the depositary, in such cases, might be recovered back by the depositor, under the common counts, in an action of assumpsit, and that it was not necessary to declare on the special contract which had been violated, as nothing remained to be done under it. That is precisely the case here. The money was recovered under the common counts, in an action of assumpsit, and that is permissible under the previous decisions of this court.

There is no pretence the deals were replaced by defendant, either with or without the direction of plaintiff, and for that reason the rulings on this branch of the case, whether strictly correct or not, do not affect the merits of the case one way or the other. As the case was presented in the trial court, that was an immaterial issue. Had defendant replaced the deals

when it was discovered they had been irregularly closed out, or had defendant offered to do so without unreasonable delay, and without additional expense to plaintiff, and the offer had been refused, then some of the questions made might have become important, otherwise not.

There is no error in the record that in any substantial degree affects the merits of the case, and the judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*