17   169
e101  ¹347

## NELSON PERIN

v.

## AUGUSTUS A. PARKER.

1. CONTRACT—BOARD OF TRADE DEAL.—In the absence of any express contract respecting margins, and absence of any evidence of a custom or usage of trade or any rules of the Board of Trade, a Chicago Board of Trade deal will be governed by the rules of the common law; and by its rules, before a broker or commission merchant could, of his own mere volition, buy in the grain of his principal, deliver it upon the previous sale made by such broker for that principal, and hold the latter responsible for the loss, he would be required, as a condition precedent, to give such principal reasonable notice and opportunity to furnish the requisite margins.

2. NOTICE—REASONABLENESS.—A telegram received by defendant at Cincinnati at 12:15 to send $6,000 margins by 12:30—it being the fault of the telegraph company, which was the sender's agent, that it was not received sooner, is not a reasonable notice

ERROR to the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding. Opinion filed October 22, 1885.

This was a suit by Parker against Perin, to recover for commissions earned and money paid by the former as commission merchant in the business of the latter, December 30, 1882. Perin, who resided and did business in Cincinnati, Ohio, directed Parker, as commission merchant doing business on the Chicago Board of Trade, to sell for him 25,000 bushels of corn, to be delivered in January, and a like amount to be delivered in May, then next. Parker on same day complied and sold on 'change 10,000 bushels at 49¾ cents per bushel, 15,000 at 49¾ cents, to be delivered in January, and 15,000 at 53¾ cents, 10,000 at 53⅜ cents per bushel, to be delivered in May. All of which was sold at the market price and Perin advised of the sale by telegram on the same day. The parties had had similar transactions from time to time during the previous two years, and, in no instance, had Perin been asked by Parker to put up margins, nor were any put up; nor were any put up

or asked for at the time of this last transaction. From the time of such sale, the price of corn advanced. Parker kept Perin advised as to state of market. January 4, 1883, Perin ordered Parker by telegram to buy 100,000 bushels of corn on break. The latter immediately sent back a dispatch saying: "January corn closes fifty, three quarters. If buy on break and delivered what shall we do with it?" To this Perin replied: "If corn is being delivered only buy twenty-five on break."

Testimony was given that the word "break" meant in Board of Trade circles, a decline in the market. Parker testified that there was no break, and therefore he did not buy. Perin testified that there was. It also appeared that "twenty-five" in Perin's dispatch meant and was understood as 25,000. January 12, 1883, Parker wrote Perin giving him the state of the market, and said: "As markets stand this evening your trades are about $3,500 against you, and if we do not hear from you to-morrow we shall draw $3,500." And January 13, Parker telegraphed Perin, that January corn was 60¼ cents and that he should draw for $5,000. Perin on same day replied by telegram saying that he would not pay draft; that when differences were settled he would pay and not before. And on the same day wrote Parker: "I wired you this morning not to draw on me as I would not pay it. I am perfectly willing to pay losses when determined but not before. I consider you had an order to cover my January sales when the market was about fifty-one cents. If you did not do so, it was your own mistake and not mine." January 15th, Parker drew and sent a draft on Perin at Cincinnati for $4,000, which the latter refused to pay and it went to protest; but on the night of the 15th, Parker went to Cincinnati and had an interview with Perin, in the course of which he admitted that there was no dispute about the corn for delivery in May, got his check book and then proceeded to fill out a check for the amount; but thinking Parker might apply it on the January corn, he concluded not to give it. He, insisting that Parker violated his orders in not buying the 25,000 bushels on the alleged break, refused to pay Parker anything and proposed to arbi-

trate.  Parker gave him no intimation of an intention to buy in the corn for Perin's account and close out the deal; but coming home January 17th, Parker found that his draft of January 15th had been protested for non-payment.  At about 11 A. M. January 18th, Parker sent Perin the following telegram :  "We notice our draft on you, 15th inst., margins for January and May corn protested for non-payment.  Unless you telegraph us six thousand dollars margins before 12:30 to-day, shall buy in the corn for your account."

Perin had an office in Cincinnati, but there is nothing to show that the telegram was taken there.  On the contrary, it appears that it was taken to the Chamber of Commerce and left at 11:25.  Perin did not go there till 12, and it was a quarter past before he got it.  He had no such sum of money with him.  His bank was two blocks away, and the telegraph office as much further.  It was quite impossible for him to comply if he had been disposed to.

There was no evidence as to any express contract, usage, or custom of the rules of the Chicago Board of Trade.  There was evidence tending to show that Parker, by his acts, waived the benefit of each demand for margins down to that of Jan. 18, 1883, and there was some evidence tending to show that Perin retracted the notice he gave to Parker, that he would not furnish any margins or pay any losses before the differences were ascertained.

The court, on behalf of plaintiff below, gave to the jury the following instructions :

6.  The jury are instructed, as a matter of law, that a commission merchant or broker is entitled to be indemnified against loss upon purchases or sales made for his principal, and if the jury believe from the evidence in this case that defendant Perin, on or about Dec. 30, 1882, ordered plaintiff Parker to sell for him 50,000 bushels of corn, to be delivered in the month of January and May, next thereafter, and that the plaintiff made such sale according to said order, and that thereafter the price of corn advanced in the market, so that there was a loss on said corn, then the plaintiff had a right to cal- upon said defendant for a sufficient sum to indemnify the plaint-

Perin v. Parker.

iff against loss; and if the jury shall further believe from the evidence, that corn did rise in value after such sale, and that the plaintiff called upon said Perin for money sufficient to protect him against loss, and that said Perin neglected and refused to pay or furnish the plaintiff with such money, then the plaintiff had a right to purchase the corn, covered by said contracts, and deliver the same on said contracts, and the defendant is liable for the loss, if any, sustained by the plaintiff; provided the jury shall believe from the evidence, that the plaintiff used due diligence to purchase said corn at the lowest market price at the time of such purchase."

8. If the jury believe from the evidence, that the defendant, Perin, ordered the plaintiff, Parker, to sell for his account 50,000 bushels of corn, and that the plaintiff, Parker, sold the same as stated in the foregoing instructions, and if the jury further believe from the evidence that the plaintiff, Parker, by letters or telegrams before the 18th of January, 1883, asked and demanded money or margins sufficient to secure the plaintiff against loss on account of said sale, and also drew drafts on the defendant for margins, which the defendant declined and refused to pay, and also that the plaintiff, Parker, went to Cincinnati where the defendant resided, and on the 16th of January, 1883, again demanded from the defendant money or margins sufficient to secure him from loss on said sales, and that the defendant neglected and refused to furnish such money or margins, then the plaintiff had a right to purchase said corn for the account of the defendant, and charge him with the amount lost and paid out by the plaintiff, notwithstanding that the jury may believe from the evidence that the said plaintiff, after his return to Chicago, and on the 18th of January, 1883, telegraphed the plaintiff that unless he deposited $6,000 margins before 12:30 on that day, he should buy in the corn for his account."

There was a verdict for plaintiff below of $4,869.91, on which judgment passed, and the defendant brings error to this court.

Mr. MELVILLE W. FULLER, for plaintiff in error; as to no-

tice, cited Denton v. Jackson, 106 Ill. 433; Moeller v. McLagan, 60 Ill. 317; Corbett v. Underwood, 83 Ill. 324.

Messrs. Monroe & Tewkesbury, for defendant in error.

McAllister, J.   There was no evidence as to any express contract between the parties respecting margins; and they had had similar transactions before without any being furnished by Perin or required by Parker.   Neither was there any evidence of a custom or usage of trade or of any rules of the Chicago Board of Trade applicable to the case.   It is therefore a case where the common law must be looked to for a guide.   By its rules the broker or commission merchant would, in such a case as this, be required as a condition precedent to the right of his own mere volition, to buy in the grain for account of his principal, deliver it upon the previous sale made by such broker for that principal, and hold the latter responsible for the loss, to give such principal reasonable notice and opportunity to furnish the requisite margins.   Denton et al. v. Jackson, 106 Ill. 433.

Parker having called upon Perin for margins by notice that he should draw on him, Perin, January 13, 1883, gave Parker notice that he should not advance any money for margins or losses before the differences were ascertained and determined.   From the receipt of that notice, if it was not his duty, Parker would have been justified in immediately buying in the corn, and, to save himself, close up the sales he had made for his principal.   And, perhaps, if the notice so given remained unretracted, he would have had the right, nothing intervening to change their relations, to treat such notice as discharging him from the duty of giving what would be considered as a further reasonable notice and opportunity to Perin to furnish the requisite margins.   Phillpots v. Evans, 5 Mees. & Welsb. 474; Ripley v. McClure, 4 Welsb. H. & Gordon, 358; Cort et al. v. The Ambergate, etc., Railway Co., 6 Eng. Law Eq. 237.

But we are of opinion that there were facts and circumstances in evidence, tending to show a retraction of that notice

by Perin, and a waiver by Parker, to make it necessary to submit the question to the jury. Parker not only failed to act upon that notice, but afterward made three other demands upon Perin for margins, each successive one being for a substantially larger amount than the former; and, besides, he sought and had a personal interview with him. In neither of the notices he gave Perin prior to that of January 18, 1883, or at the interview, did he give any intimation of an intention on his part to buy in the corn and close out the transaction. Taking all the circumstances into consideration, we think it was a question which should have been submitted to the jury, whether or not Parker, by his acts, waived all rights under each of his notices, down to that of said January 18th. So that, if Perin's notice of January 13th, that he would advance no margins or pay any losses before the differences were determined, should be found to have been retracted by him, or waived by Parker, and it should be found that the latter had, by his acts, waived all the notices he had given to Perin before that of said January 18th, in which he notified Perin that unless he sent six thousand dollars, by telegraph, by 12:30 of that day, he should buy in the corn for Perin's account, then the case turned upon the question, whether or not that afforded reasonable notice and opportunity to Perin within the rule announced by the Supreme Court in Denton v. Jackson, *supra.* We are of opinion that such notice, having been received by Perin at 12:15, to send $6,000 by telegraph by 12:30, it not being his fault that it was not received sooner, but the fault of the telegraph company, which was the agent of Parker, it was not a reasonable notice. The notice was not sent to Perin's office, but to the Chamber of Commerce, at Cincinnati; Perin did not go there until twelve o'clock, and it was a quarter past when it was handed to him. He was not expected to, and did not, have any such sum of money with him, and his bank and the telegraph office were the distance of two blocks away; besides, it would require more than the time allowed to make the necessary arrangements for the money.

Now, by the sixth and eighth instructions for the plaintiff, each of which purported to direct the jury as to all the neces-

sary elements of the plaintiff's cause of action, there is an utter failure to submit to the jury any question as to the retraction by Perin of his notice of January 13th; any question as to waiver by Parker of all his notices prior to that of January 18th, or of the reasonableness of that or any other notice by Parker to his principal.

We are of opinion that both of those instructions were substantially defective and misleading, for the giving which, the the judgment must be reversed and cause remanded.

Judgment reversed.