DAVID F. BARCLAY *et al.*

*v.*

JOHN WARNE *et al.*

*Filed at Ottawa October 31, 1892.*

1. CONTRACT—*construed.* G. & H., while carrying on a cheese factory on the dividend plan, by which they were to manufacture the milk delivered to them by their patrons into butter and cheese and sell the product, and, after deducting the cost of manufacture and sale, divide the net results monthly among the patrons, gave a bond, with personal security, conditioned that if the principals should well and truly pay, or cause to be paid, unto such patrons of the factory the just and full sum of the monthly dividends declared by G. & H. to their patrons. for the milk delivered by them, and shown by their books to be such patrons' due, the bond should be void : *Held,* that the dividends mentioned in the bond were monthly dividends based on the business of the factory, or dividends resulting from the product of the milk supplied, and not dividends based upon a different plan.

2. SURETIES—*rule as to strict construction of their liability.* The rule that a surety has a right to stand upon the literal terms of his contract is one that prevails for his benefit, and to adopt a literal interpretation when it will work him an injury is to work a perversion of the rule. A technical construction is never adopted for the purpose of imposing a burden on his shoulders.

3. The general rule that governs in the interpretation of contracts, that the court is to ascertain the real intention and meaning of the parties, is the rule that is to be applied against sureties.

4. It is a well settled rule of law that the measure of the liability of sureties is fixed by the terms of the instrument which they sign, and that the burden of their undertaking can not be enlarged.

APPEAL from the Appellate Court for the Second District ;— heard in that court on appeal from the Circuit Court of DeKalb county; the Hon. CHARLES KELLUM, Judge, presiding.

Messrs. BOTSFORD & WAYNE, and Messrs. SHERWOOD & JONES, for the appellants :

A surety can not be bound beyond the express and literal conditions of his undertaking. *Miller* v. *Stewart,* 9 Wheat. 680 ; *Field* v. *Rawlings,* 1 Gill, 581.

20      BARCLAY *et al. v.* WARNE *et al.*

Brief for the Appellees.    Opinion of the Court.

Any agreement between the principal and his creditors by which the terms of a bond are changed without the assent of the sureties, releases the sureties. *Cunningham* v. *Wrenn,* 23 Ill. 64; *Burt* v. *McFadden,* 58 id. 479; *Dodgson* v. *Henderson,* 113 id. 360.

The measure of the liability of sureties is fixed by the terms of the instrument they sign, and such undertaking can not be enlarged or varied by judicial construction. Their undertaking will be construed as the words used are ordinarily understood: *Mix* v. *Singleton,* 86 Ill. 194; *People* v. *Tompkins,* 74 id. 482; *Phillips* v. *Singer Manf. Co.* 88 id. 305; *Burgett* v. *Paxton,* 15 Bradw. 380.

A surety is not held beyond the precise words of his undertaking, and in case of doubt as to his liability, the doubt is generally, if not necessarily, solved in his favor. *Adams* v. *People,* 12 Bradw. 380; *Stull* v. *Hance,* 62 Ill. 52.

Mr. CHAS. WHEATON, and Mr. W. R. S. HUNTER, for the appellees:

Appellants are concluded by the dividends entered in the books. *Chicago* v. *Gage,* 95 Ill. 593; *Cave* v. *Mills,* 7 H. & N. 913; *McKabe* v. *Raney,* 32 Ired. 399; *Cawley* v. *People,* 95 id. 249; *Baker* v. *Preston,* 1 Gilm. (Va.) 235; *United States* v. *Girault,* 11 How. 27; *Stovall* v. *Banks,* 10 Wall. 583; *Roper Sangamon* v. *Lodge,* 91 Ill. 518.

Mr. JUSTICE BAKER delivered the opinion of the Court:

C. W. Gould and Edmund Hugg, firm of Gould & Hugg, were the owners and proprietors of a cheese factory known as the "Blackberry Cheese Factory." Said factory was conducted on what is commonly known as the "dividend" plan. Its proprietors received the milk of their patrons at their factory, manufactured it into butter and cheese, and were paid for manufacturing and selling, four cents per pound for butter and two cents per pound for cheese, and after the product

was disposed of and the money therefor received, the proprietors made the proper deductions for manufacturing, etc., and divided the net proceeds of the product among their patrons in proportion to the weight of milk furnished by each.

In order to insure a faithful accounting of the property put in their hands by their patrons, said Gould and said Hugg, with David F. Barclay and David Butler, appellants herein, as their sureties, executed and delivered, on the 24th day of April, 1882, a voluntary bond, in the penal sum of $3000, to John Warne, M. C. Gates and William Beith, trustees of the patrons of the Blackberry Cheese factory, the now appellees. The condition of said bond was as follows : "The conditions of this obligation are such, that if the above bounden Gould & Hugg, their heirs, executors and administrators, or either of them, shall well and truly pay, or cause to be paid, unto the said patrons of the Blackberry Cheese factory, or their heirs or assigns or administrators, the just and full sum of the monthly dividends declared by the said Gould & Hugg to their Blackberry patrons for the milk delivered thereat, and shown by their books to be said patrons due, then this obligation to be void and of no effect."

The business of the factory was conducted strictly on the dividend plan until sometime in the spring of 1884, but about that time some of its patrons became dissatisfied with the dividends they were receiving and threatened to transfer their patronage to the LaFox factory, which was a few miles distant, and was also conducted on the dividend plan. In order to retain their patrons Gould & Hugg made special contracts with some of them to pay them stipulated prices per hundred pounds for milk, such prices ranging from $1.40 to $1.60, and in favor of the rest of them they declared and paid dividends based on and identical with the dividends declared by the LaFox factory. The monthly dividends for the several months up to and including December, 1884, were paid. The amounts due for the milk delivered at the factory in January,

February and March, 1885, were not settled by the firm. About the last of March the firm failed and made an assignment, and the assignee afterwards paid twenty-two per cent on the claims of the several patrons of the factory. Appellees, obligees in the bond of April 24, 1882, then brought this action on said bond, for the use of William Taylor and some thirty-three other patrons of the factory, against Gould & Hugg and against appellants, their sureties. In respect to eight of the usees, who had made agreements to receive specific and designated prices for their milk, the suit was virtually abandoned, and no evidence was introduced at the trial to establish their claims. The defense made by appellants, at the trial, to the demands of the other twenty-six usees, who are now the beneficial appellees, was, that they made agreements with Gould & Hugg to receive for their milk amounts equal to the dividends declared at the LaFox factory, instead of dividends based on the quantity of butter and cheese made at the Blackberry factory, the cost of making and selling the same, and the prices obtained therefor; that the arrangements so made amounted to sales, and that such sales were not within the purview of the contract for the performance of which appellants became sureties. This contention of appellants was decided adversely to them by the judgment of the circuit court and the judgment of affirmance rendered in the Appellate Court, and such adjudications are, upon this appeal, final and conclusive.

The case was tried before the court, without a jury. Appellants submitted to the court some half dozen written propositions to be held as law in the decision of the case, but the court was of opinion they were not the law, and marked them refused. Most of said refused propositions were substantially alike in the legal propositions that were announced in them. Two of them read as follows:

"That the obligation of said sureties that they should pay the just and full sum of the monthly dividends declared by

the said Gould & Hugg to their Blackberry patrons for the milk delivered thereat, and shown by their books to be the patrons' due, obligates the said sureties to pay the just dividends of said Gould & Hugg, as based upon the actual proceeds of the sale of product of said factory, after deducting the usual price for manufacturing, and not such sums as Gould & Hugg may have denominated dividends, or which may appear on their books as dividends, which are not based upon the actual proceeds arising from the sale of said product."

"That under the condition of said bond the said Barclay and Butler are only liable for the just accounting to and payment to the patrons of the net proceeds of their milk, and that they are not liable for any sum carried out by Gould & Hugg on their books which is not based upon the sale of the product of said milk, nor any price which Gould & Hugg may have arbitrarily fixed therefor."

It appears from the uncontradicted evidence that the dividends that were entered on the books for the milk delivered in January, February and March, 1885, were based on the La-Fox dividends for said several months; that in arriving at and determining said respective dividends, neither the amount of the milk received at the Blackberry factory, nor the amount of the product of said factory, nor the amount of the proceeds of the sale of such product, nor the price of manufacturing, was taken into consideration, and that the dividends so entered were thirteen cents on a hundred pounds of milk in excess of what dividends based on the business done by the Blackberry factory would have been.

It is a well settled rule of law, that the measure of the liability of sureties is fixed by the terms of the instrument they sign, and that their undertaking can not be enlarged. It is insisted, however, by appellees, that the condition of the bond does not require that the dividend should be declared upon any particular basis,—that its condition is to pay "the just and full sum of the monthly dividends declared by the said

Gould & Hugg to their Blackberry patrons for the milk delivered thereat, and shown by their books to be said patrons' due," and that the dividends here in question were "declared by the said Gould & Hugg" and are "shown by their books." This is sticking in the bark. The rule that a security has a right to stand upon the literal terms of his contract is one that prevails for his benefit, and to adopt a literal interpretation when it would work him an injury would be to work a perversion of the rule. A technical construction is never adopted for the purpose of imposing a burden upon his shoulders. The general rule that governs in the interpretation of contracts, that the object is to ascertain the real intention and meaning of the parties, is the rule that is to be applied as against these appellants. In view of the fact that the Blackberry factory was, at the time of the execution of the bond, being conducted on the dividend plan, in view of the evidence in the record as to what is commonly understood and meant by the "dividend plan," and of the provision in the bond for the payment of monthly dividends declared by the proprietors to their patrons for the milk delivered by them at the factory, there can be no question but that it was the intention of both obligors and obligees that the monthly dividends mentioned in the bond should be dividends based on the business of that factory. In other words, it was understood that appellants were guaranteeing that Gould & Hugg would account for and pay the monthly dividends which would result from the product of the milk supplied to said Gould & Hugg.

It results from what we have said, that it was error to refuse to hold and apply to the evidence the written propositions quoted above. It necessarily follows from such refusal, that LaFox dividends, instead of the dividends arising from the operations of the Blackberry factory, were by the judgment imposed upon appellants, and that the judgment rendered was for an amount greater than the sureties were liable for under their agreement.

It is insisted that the question of damages is a question of of fact, and that it is here conclusively settled in favor of appellees by the judgments of the courts below. The amount of the damages, as depending upon the evidence, is a question of fact; but the question what is the measure of damages, or what is the rule for assessing the damages in a particular case, is always a question of law. (*Larminie* v. *Carley*, 114 Ill. 196; *City of Joliet* v. *Weston*, 123 id. 641.) Besides this, it devolves upon the court, as a question of law, to construe a written contract or sealed instrument, and not upon the jury, as a question of fact.

The judgments of the Appellate and circuit courts are reversed; and the cause is remanded to the latter court.

*Judgment reversed.*