Argued 17 January; decided 1 April; rehearing denied 6 May, 1901.

## MELLOTT *v.* DOWNING.

[ 64 Pac. 393.]

AGREEMENT BETWEEN PLEADINGS AND PROOFS.

1. Parties must prosecute or defend legal proceedings on the grounds set forth in their pleadings, and should not be permitted to present other grounds of recovery or defense.

PLEADING POSSESSION THROUGH A LIEN.

2. Where a special right to another's property is claimed under a lien, the lien must be pleaded, and can not be shown under a general denial: *Guille* v. *Wong Fook*, 13 Or. 577, applied.

CONSTRUCTION OF PLEADING—MONEY HAD AND RECEIVED.

3. A complaint alleging that plaintiff paid defendants certain money to be used in performing a stated class of contracts, that defendants never performed or attempted to carry out any contracts of any kind, but appropriated the money to their own personal use, is sufficient, without stating that an accounting had been demanded, or that plaintiff had paid or tendered what the defendants had earned, for the complaint clearly shows that nothing had been earned. .

GENERAL RULE FOR CONSTRUING COMPLAINTS.

4. A liberal construction will always be given the allegations of a complaint, when it is objected to after answering; while a stricter rule applies when a demurrer is presented.

MONEY HAD AND RECEIVED—BROKERS—MARGINS.

5. Where one deposits money with a broker to cover margins on purchases on a board of trade and the broker reports fictitious transactions, without any actual proceedings, he has no lien on the fund, and the depositor can sue him as for money had and received.

From Multnomah : ALFRED F. SEARS, JR., Judge.

Action by George C. Mellott against F. O. Downing and F. H. Hopkins for money had and received by the defendants to the plaintiff's use. The complaint alleges that on or about the eighteenth of September, 1896, at Portland, Oregon, the plaintiff, for the purpose of securing defendants against loss through failure of the plaintiff to pay or reimburse them for "commissions earned, money advanced, or liability assumed" by them "in the purchase and sale of grain or options in the board of trade of Chicago, Illinois, for and on account of plaintiff," assigned and delivered to them a certificate of de-

posit for $500, dated August 21, 1896, due one year after
date, for which they gave a receipt stating that the cer-
tificate was "held as collateral to secure us in case of
loss;" "that defendants never earned any commission,
or advanced any money, suffered any loss, or assumed or
incurred any liability whatever in the purchase or sale of
grain or options in said board of trade or elsewhere for
or on account of the plaintiff, and never purchased any
grain or any option for or on account of plaintiff in said
board of trade or elsewhere, and all transactions between
plaintiff and defendants with reference to the purchase
or sale of grain or options in said board of trade or else-
where ceased and determined on or before the thirteenth
day of November, 1896;" that thereafter, and on the
twenty-third of August, 1897, the defendants collected
the amount due upon such certificate, and thereby be-
came and still are indebted to the plaintiff in the sum of
$525 for the money so received; that on the twelfth of
October, 1897, at Portland, plaintiff duly demanded pay-
ment of such sum and interest from defendants, but they
refused and still refuse to pay the same or any part thereof,
and the whole of said sum and interest is still due and
owing from defendants to the plaintiff.

The defendants in their answer admit the assignment
and delivery to them of the certificate of deposit de-
scribed in the complaint, but deny that it was made for the
purpose alleged, "or otherwise than as security for losses
suffered by plaintiff, commissions earned and advance-
ments made by defendants on or account of transactions
thereafter to be had by defendants with plaintiff, or that
for said alleged purpose, or for other purpose than as
herein alleged, plaintiff received from defendants, or from
either of them, the written acknowledgment of the de-
livery of said certificate set forth in said complaint;" and
affirmatively allege that "defendants duly performed all

provisions of said agreement under which said certificate of deposit was received from plaintiff by defendants, on their part made and provided." They also admit, by not denying, all the other allegations of the complaint, except that by reason of the premises they became and are indebted to the plaintiff in the sum of $525 for money received to his use, and that plaintiff "duly" demanded payment of such sum and interest. The new matter alleged in the answer was put in issue by a reply, and a trial had before the court and a jury.

The plaintiff, to sustain the issues on his part, gave testimony tending to show that in the latter part of September, 1896, he called at the office of the defendants, who are wheat and stock brokers in the City of Portland, with the expectation of doing some trading on the Chicago Board of Trade ; that he had a talk with Mr. Downing, who told him the defendants did a strictly brokerage business, and would place such orders as he might give them on the Chicago Board of Trade, charging him a commission of one fourth cent per bushel ; that a day or two later he gave the defendants an order to buy five thousand bushels of wheat for him, which Downing told him would be placed with Raymond & Company, of Chicago, one of the most reliable brokers doing business on the board of trade in that city ; that he assigned and delivered to the defendants the $500 certificate of deposit, to cover commissions and margins on such deals as he might make ; that thereafter he gave defendants several orders for the purchase and sale of grain, and from time to time received statements, or what purported to be statements, of such deals, showing the date, amount, and price of the purchase or sale, and stating on their face that they contemplated the actual receipt and delivery of the property and payment therefor, and were made in accordance with and subject to the rules, regulations, and

customs of the board of trade of the City of Chicago, and
the requirements of its board of directors, and all amend-
ments that may be made thereto ; that on October 19,
1896, he received one of such statements, showing a
credit in his favor of $1,475, $100 of which was paid to
him at the time by the defendants, and which he has
since retained.   He also gave testimony tending to show
that, as a matter of fact, none of his orders were placed
by the defendants on the board of trade of Chicago, but
that the pretended purchases and sales were merely sup-
posed or fictitious transactions, which took place in their
office ; that the defendants mere running what is known
as a "bucket shop," with no connection whatever with
the Chicago Board of Trade ; that, after learning that
his orders were not in fact placed on the Chicago Board
of Trade, he demanded the return of his certificate of
deposit in June, 1897, but that defendants refused to
surrender it to him ; that on October 12, 1897, he again
made a demand therefor in writing, a copy of which was
introduced in evidence.

At the close of plaintiff's testimony, defendants moved
the court to direct a verdict in their favor on the ground
that the evidence introduced by the plaintiff failed to
support the allegations of the complaint, and upon the
further ground that the plaintiff had failed to prove a
sufficient demand for the return of his certificate of
deposit, or a tender of the amount paid by defendants
to plaintiff on account of the transactions mentioned and
referred to in the testimony.   This motion was overruled,
whereupon defendants moved the court for a judgment
of nonsuit, which was likewise overruled.   They there-
upon gave testimony to support the issues on their part, in
the course of which the defendant Downing was allowed
to testify, over the objection and exception of the plaintiff,
that the certificate of deposit mentioned in the complaint

was assigned to the defendants to secure any indebtedness that might appear due from plaintiff to them "on any deal whatever, either for profits or loss, on wheat, or advances, or any other like reason ;" that plaintiff was indebted to the defendants in the sum of $5.00 on account of transactions theretofore had at the time the certificate was so assigned, and it was intended as security for such sum, as well as any other indebtedness that might thereafter accrue, including charges for telegrams ; that at the time plaintiff demanded the return of the certificate he did not tender repayment of money advanced or of charges made by defendants.

After the evidence was all in, the court, among other things, instructed the jury that if any indebtedness from plaintiff to the defendants existed, which the certificate was intended to secure, equal to the amount of the certificate, or if plaintiff received and retained any part of the gain or profits on any orders given by him to the defendants, or if they advanced to him or on his account any money in accordance with the agreement under which the certificate was deposited, and there has been no accounting between them, or demand therefor and refusal, or if plaintiff and defendants, subsequent to the agreement under which the certificate was deposited, mutually agreed that it should be held by defendants as security, or pledged for any sum charged by defendants against plaintiff as the result of any transaction, and plaintiff did not tender payment of such sums in full before the commencement of this action, or if at any subsequent time to the agreement under which the certificate was deposited the defendants accounted to plaintiff upon the results of transactions theretofore had between them, and upon such accounting it was agreed that any sum of money was due defendants from the plaintiff, and that the certificate of deposit should be held as security for its repay-

ment, and plaintiff had not tendered such sum in full before the commencement of the action, their verdict must be for the defendants. The verdict and judgment were in favor of the defendants, and the plaintiff appeals.

REVERSED.

For appellants there was a brief over the name of *Watson & Beekman*, with an oral argument by *Mr. Edward B. Watson*.

For respondents there was a brief over the name of *Woodward & Palmer*, with an oral argument by *Messrs. John H. Woodward* and *William W. Cotton*.

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. There are some twenty assignments of error in the abstract, but it is unnecessary to notice them in detail. They are practically all predicated on the contention— which we think is sound—that the court permitted the defendants to recover upon defenses not pleaded. The answer admits that the certificate of deposit mentioned and described in the complaint was received from the plaintiff "as security for losses suffered by plaintiff, commissions earned, and advancements made by defendants on or account of transactions thereafter to be had by defendants with plaintiff." There is no averment, however, that any losses were suffered, commissions earned, or advancements made by them on account of any transactions with the plaintiff, or that there is any amount due them for which they were entitled to retain possession of the certificate, or its proceeds, as security.

2. Where, as here, the defendant admits the ownership of the property to be in the plaintiff, and claims a

right to its possession by virtue of a lien thereon, such lien should be pleaded, and can not be shown under a general denial : *Guille* v. *Wong Fook*, 13 Or. 577 (11 Pac. 277). It was, therefore, necessary for the defendants, in order to defend on the theory that the certificate of deposit had been assigned to them as security, to plead that fact, and to set out the obligations incurred or losses sustained which it was intended to so secure, and that plaintiff had not reimbursed them therefor. The allegation that they duly performed all the provisions of the agreement under which the certificate of deposit was received does not imply that they suffered any losses, earned any commissions, or made any advancements for or on account of the the plaintiff, entitling them to hold and retain possession of such certificate. They may have duly performed all the provisions of the contract, whatever they were, and still not be entitled to hold it or its proceeds. We are of the opinion, therefore, that the court erred in permitting defendants to give evidence tending to show that they were entitled to the possession of the certificate of deposit, as security for and on account of money they had advanced to the plaintiff, commissions earned, and losses sustained, and in submitting that question to the jury, with an instruction that, if they found plaintiff had not returned or offered to return such advancements or paid such commissions or losses, he could not recover.

3. Indeed, as we understand the argument for the defendants, it is not seriously contended that such rulings were proper under the pleadings, but that the errors were harmless, because the complaint does not state facts sufficient to constitute a cause of action, and the plaintiff was not entitled to recover under the testimony. The objection to the complaint is that it does not allege payment by the plaintiff of the indebtedness intended to be secured

by the certificate of deposit, or a demand for an account-
ing.   The theory, however, upon which the complaint
was framed and the action prosecuted, is that the defend-
ants failed to carry out their contract, and did not make
any purchases or sales for him on the Chicago Board of
Trade, and therefore no commissions were earned or lia-
bilities incurred by them for the security of which they
would be entitled to hold the certificate of deposit.   The
complaint, after alleging the terms of the contract of bail-
ment under which the certificate was assigned to the de-
fendants, avers that they never earned any commissions,
advanced any money, suffered any loss, or assumed or
incurred any liability whatever in the purchase or sale
of grain or options, and never purchased any grain or
any option for or on account of the plaintiff on the Chi-
cago Board of Trade or elsewhere, and all transactions
between plaintiff and defendants with reference to such
purchase or sale of grain ceased and determined on or
before the thirteenth of November, 1896.   It therefore
appears from the complaint that there never was any
secured indebtedness or conditions to be performed by
the plaintiff before he would be entitled to the proceeds
of the certificate of deposit, but the defendants became
liable to him for the money received therefor as for money
had and received : *White Pine Bank* v. *Sadler*, 19 Nev. 98
(6 Pac. 941).

4.   It is argued that none of the averments of the
complaint, excepting the statement that defendants never
advanced any money, etc., can avail the plaintiff, because
the assertion that defendants never earned any commis-
sion, suffered any loss, or assumed or incurred any lia-
bility for or on account of the plaintiff in the purchase or
sale of grain or options, etc., is a mere conclusion of law,

39 OR.—15.

and the negative allegation that defendants never purchased any grain or any options is inconsistent with the affirmative statement that all transactions between plaintiff and defendants with reference to the purchase or sale of grain ceased on the thirteenth of November. It must be remembered in this connection that the objection to the sufficiency of the complaint comes after answer, and therefore it must be construed most strongly in favor of the pleader : *Oregon & Cal. R. R. Co.* v. *Jackson County*, 38 Or. 589 (64 Pac. 307). The most that can be urged against the allegation that defendants never earned any commission, suffered any loss, or incurred any liability for or on account of the plaintiff in the purchase or sale of grain or options on the board of trade of Chicago is that it is a defective statement of a cause of action, which, under all the authorities in this state, is cured by answering over. Nor does it necessarily follow from the averment that all transactions between plaintiff and defendants ceased on the date named in the complaint that there had previously been any actual purchases or sales made by the defendants for and on account of the plaintiff on the board of trade of Chicago, under the terms of the contract of bailment. The allegation is that all transactions with reference to such purchases ceased. This may imply nothing more than that all negotiations between plaintiff and defendants with reference thereto ceased and terminated on that day. It is true, while the complaint alleges that defendants never purchased any grain or any options for or on account of the plaintiff on the board of trade, it does not aver that they never sold any grain for him ; but, in view of the general allegation that no commissions were earned, advancements made, or liabilities incurred by the defendants for or on account of the plaintiff in either the purchase or sale of grain or options on the Chicago Board of Trade, the omission to allege that no sales were made

is not fatal to the complaint, after answer.   If the objection now made to the complaint was on a demurrer, the argument of counsel would perhaps not be without merit, but it comes too late after answer.

5.   So. far as the right to recover under the testimony is concerned, but little need be said.   From the statement of facts it appears that the evidence tended to show that the defendants disobeyed the instructions of the plaintiff, and, while he assumed and believed that his orders were actually placed as directed, the several transactions were in fact fictitious.   If this is true, the defendants have no lien upon the money deposited with them to cover margins for advancements made or liabilities incurred on account of such fictitious transactions, and the plaintiff is entitled to recover it as for money had and received : *Jones* v. *Marks,* 40 Ill. 313 ; *Denton* v. *Jackson,* 106 Ill. 433 ; *Larminie* v. *Carley,* 114 Ill. 196 (29 N. E. 382); *Gregory* v. *Wendell,* 39. Mich. 337 (33 Am. Rep. 390).   It follows from these views that the judgment of the court below must be reversed, and a new trial ordered.

REVERSED.